In the Matter of the Estate of EMMA C. WEISKOTTEN, Deceased.

Surrogate's Court, New York County, March 21, 1938.

*Davies, Auerbach & Cornell* [*Sydney G. Soons* and *Howell D. Boyd* of counsel], for the executors, petitioners.

*Abberly, Bryde, MacFall & Amon,* for Mildred N. Bryde, a beneficiary under deed of trust.

*Henry T. Hornidge,* special guardian for an infant.

*Elfers & Trebing,* for Julia C. Lange and Henry J. Lange, legatees.

*Rabenold, Scribner & Miller,* for the Evangelical Lutheran Church of the Advent.

DELEHANTY, S. By *inter vivos* trust indenture dated March 25, 1935, deceased erected a trust wherein she reserved the income to herself for life and reserved as well the power to amend and modify the terms of the indenture. One paragraph of the indenture provided:

" *Eighth.* Any gift tax assessed against the Grantor, the Trustee hereunder, the trust estate or the remainderman hereunder shall

be paid out of the principal and all inheritance, estate and transfer taxes, both State and Federal, which may be assessed against the estate of the Grantor, shall also be paid out of the principal of this trust. It is the intention of the parties hereto that none of the remaindermen herein shall be required to pay any portion of such taxes that may be so assessed."

Eighteen days later, on April 12, 1935, she drew her will. One of the clauses of her will said:

"*Seventh.* I direct that all inheritance, estate and transfer taxes assessed upon my estate or any transfer under this my Will shall be paid out of my residuary estate."

Later and by instrument dated July 26, 1935, deceased as grantor under the indenture of trust exercised her power of modification and made material alterations in respect of the benefits to be derived thereunder by the so-called remaindermen of that trust.

The executors of deceased ask for a construction of her will and for a determination of the true intent and meaning of paragraph seventh thereof in relation to the death taxes payable out of funds passing through the hands of the executors as such. Section 124 of the Decedent Estate Law grants in the broadest terms to the Surrogate's Court the power to allocate the burden of death taxes. All parties affected by the incidence of such taxes in respect of the property of this deceased are before the court.

The problem presented is whether there should be apportionment of the death tax levied or assessed under the provisions of the Revenue Laws of the State and of the United States upon " any property required to be included in the gross estate of a decedent under the provisions of any such law." The " estate " for tax purposes both under State and Federal revenue acts is a wholly artificial thing. It may contain property never owned by deceased, *e. g.*, insurance moneys or property over which he had only a power of appointment. It may contain property which he once owned but the title to which he has parted with antecedent to death, *e. g.*, transfers in contemplation of death and property transferred to a trustee for his own benefit. It may contain property passing at death though not by will, *e. g.*, the subject-matter of a " Totten " trust. It must contain property owned by the deceased at death which is operated on by his will or which passes in intestacy. It is obvious that the statutory creation of this artificial " estate " and the imposition of a tax based upon its supposed existence present problems respecting tax burdens and respecting the obligations of executors in respect thereof which have their base in the duty imposed to pay out of estate funds taxes on property which the executors never possess and, therefore, cannot administer.

The plan for apportionment prescribed by section 124 of the Decedent Estate Law is in accord with equitable principles. It is to be applied " except in a case where a testator otherwise directs in his will." The question here presented is whether there is a direction in the will of this deceased for other than the equitable proration which the statute itself commands and which equity, apart from the statute, would prescribe.

The dispositions in the trust indenture are essentially testamentary in their operation. The grantor under that indenture reserved to herself all income for life. Upon her death the plan outlines a disposition of principal much as might be made by will. The trustees under the deed of trust are the same persons as the executors named in the will. To some degree the beneficiaries under the deed of trust are beneficiaries under the will. The securities deposited under the trust indenture aggregate a very large sum in value. The will may reasonably be related to the indenture executed so short a while before. The modification of the indenture may as reasonably be related to the will executed only three months before. All three instruments may reasonably be regarded collectively as an expression of the benevolent purposes of deceased which she intended to become effective upon her death.

Stress is laid by the beneficiaries under the trust indenture upon the quoted text of the will. The beneficiaries of the will lay emphasis upon the text quoted from the indenture. If chronology is to be given any weight it must of course be apparent that the latest declaration of deceased respecting the burden of her taxes was that made in the instrument of July 26, 1935, wherein she stated: " Except as hereby amended and modified, I do hereby ratify and confirm all of the provisions of said agreement of trust dated March 25, 1935." That declaration was a reiteration by her of paragraph eighth quoted herein from the indenture. It cannot be denied that on a strict and literal construction the directions as to tax burden found in the trust indenture are irreconcilable with the directions as to tax burden found in the will. Again, if chronology is to be given weight it could be said that as to the trust fund deceased has resolved the inconsistency by reiterating on July 26, 1935, that the taxes on the trust fund principal were payable out of that principal. Resort need not be had to chronology alone, however, because the instruments can be given an interpretation which is entirely reasonable and which comports with an equitable result even if the instrument of July 26, 1935, is disregarded.

The instruments should be read together. So read each instrument prescribes the rule for the subject-matter operated on by

the respective instrument. This result is not contradictory of the will. The court is not constrained to read this will as containing a direction canceling an equally solemn declaration in the indenture of trust. Quite similar text has been held not to require literal interpretation. (*Matter of Duryea*, 277 N. Y. 310.) The cited case is authority for an interpretation of the will which leaves undisturbed the direction in the trust indenture respecting taxes.

The court holds that the principal of the *inter vivos* trust is chargeable with the tax burden arising because of the inclusion of the trust fund in the so-called " tax estate " of the deceased. The true estate of the deceased is exonerated from that burden.

Submit, on notice, decree construing the will and apportioning the taxes accordingly.