UNION TRUST COMPANY *et al., Ex'rs and Trs. vs.*

ISABEL L. WATSON *et al.*

OCTOBER 28, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is a bill in equity for the construction of the will of Byron S. Watson, late of the city of Providence, deceased, hereinafter sometimes referred to as the testator. All adult respondents have filed answers to the bill and all minors and contingent interests and the interests of persons unascertainable or not in being are represented by guardians *ad litem* appointed for that purpose by the court. Such guardians have filed answers submitting the interests of their respective wards to the care and protection of the court. The cause was heard in the superior court on bill, answers and proof and being ready for hearing for final decree has been certified for our determination in accordance with general laws 1938, chapter 545, §7.

The complainants Union Trust Company and Isabel L. Watson are executors under the will of Byron S. Watson, who died on September 9, 1947. His will, which was dated May 21, 1946, was admitted to probate on September 16, 1947 by the probate court of Providence. The complainants are trustees of the residuary estate of the testator by virtue of the provisions of clause Third of his will. They are also trustees under a separate insurance trust agreement entered into on June 26, 1940 by the testator and complainants.

The bill alleges that the complainants are advised "that an estate tax will be payable to the United States of America and estate and legacy taxes to the State of Rhode

Island out of the gross estate of the testator as determined for the purpose of computing said taxes and that there will be included in said gross estate for Federal Estate tax purposes the proceeds of the life insurance policies which were the subject matter of the Insurance Trust Agreement above referred to, and that the proceeds of said insurance policies amount to One Hundred Sixty-eight Thousand Five Hundred Twenty-seven Dollars ($168,527.00), which sum is now held by your complainants as trustees as aforesaid. Said complainants are further advised that it is impossible presently to determine the total amount of all of the aforesaid taxes. They estimate that the total federal estate taxes will amount to One Hundred Eight Thousand Dollars ($108,000.00); that the total death taxes payable to the State of Rhode Island will be Eight Thousand Seven Hundred Fifty-four Dollars ($8,754.00). They further estimate that the value of all the assets includable in said gross estate of the testator. exclusive of the proceeds of the life insurance policies now held by said complainants as Trustees as aforesaid will be approximately Three Hundred Seven Thousand Five Hundred Dollars ($307,500.00)."

After setting out certain clauses of the will and insurance trust agreement, hereinafter quoted, the bill further alleges that the "testator was survived by his widow, the complainant, Isabel L. Watson, by three daughters, the respondents, Isabel Watson Taylor, Hope Watson Davis and Annie Watson (Hurst) Lowndes, and by the respondents Audrey Hope Davis and Patricia Watson Davis, daughters of the testator's daughter Hope Watson Davis and by the respondents, John Edward Hurst, Jr. and Frances Lucas Hurst, children of the testator's daughter, Annie Watson (Hurst) Lowndes."

The bill also alleges that the terms and ultimate beneficiaries of the principal of the trust estate created by that insurance trust agreement are not the same as the terms and ultimate beneficiaries of the principal of the trust estate created by the testator's will and therefore, by

reason of the premises as above set forth, the complainants are in doubt as to who, and what property, should bear the ultimate burden of payment of death taxes, and they seek the answer of this court to the following questions:

"1. Should the complainants as Executors as aforesaid pay all Federal Estate Taxes and all estate and legacy taxes payable to the State of Rhode Island from the general assets of the testator's estate? 2. Should the complainants as trustees under the Insurance Trust Agreement pay to the United States or to the State of Rhode Island or to themselves as Executors under the will all or any portion of such taxes, and if so, what portion thereof?"

The determination of these two questions requires a consideration of the will of 1946, an earlier will of June 26, 1940, the insurance trust agreement, and certain provisions of the United States internal revenue code. The basic point in issue is whether the estate disposed of under the instant will shall bear the entire burden of death taxes or whether that burden shall be apportioned between the estate passing under the will and the estate transferred under the insurance trust agreement.

It is to be noted that the earlier will and the insurance trust agreement were both executed on June 26, 1940, presumably as one complete transaction. Both of these instruments contain provisions as to the payment of taxes.

The insurance trust agreement of 1940, clause Sixth, paragraph (12), provides as follows:

"If there shall be any tax or taxes in the nature of 'inheritance' or 'successon' or 'transfer' or 'estate' taxes that must be paid because of the transfer to said trustee of said trust fund or because of any payments of principal or income made hereunder and in accordance herewith, said trustee shall pay such tax or taxes out of the general principal of said trust fund."

Clause First of the will of 1940 provides:

"I direct that my executors hereinafter named pay all my just debts, my funeral expenses and the expenses of administration of *my estate* including as such ex-

penses of administration any and all taxes in the nature of estate, inheritance, legacy, transfer and succession taxes which shall be payable to the Government of the United States or to any State of the United States." (italics ours)

In the 1946 will the above clause appears to be the same except that in such will the phrase "by reason of the occasion of my death" was added at the end of the clause.

The statutes of the United States establish or confirm the well-recognized and fundamental rule that where the taxable estate includes, as in the instant cause, the proceeds of life insurance, payable otherwise than to the estate, a portion of the federal estate tax is payable by the beneficiary to the executor "Unless the decedent directs otherwise in his will * * *." See 26 U.S.C.A. §826 (c).

Since the insurance trust agreement and the earlier will were executed on the same date, it is clear that the testator at that time intended that taxes attributable to each fund should be payable out of such respective funds. In each of those instruments he inserted a provision to that effect. His intention at the time of their execution is thus so clearly manifested that if there had been no later will no possibility of doubt as to his intention could have arisen.

While it is contended by one of the respondents that the provisions of the will of 1946 constitute a modification of the insurance trust agreement of 1940, the answer to such argument is that no power was reserved therein to modify or revoke the trust agreement *by will*. Clause Third of the agreement reserves to the settlor certain rights and powers to terminate such agreement, or to withdraw any of the insurance policies, or to use any of the policies as security for loans, "and the right and power to modify or revoke any or all of the provisions of this agreement dealing with the disposition of the income or principal, or any part thereof, of said trust fund, by a written instrument signed by me *and delivered to said trustees* * * *." (italics ours) There is no evidence that the testator's will or any other

instrument in writing purporting to revoke or modify the trust agreement was ever delivered to the trustees.

Where the settlor reserves a power to revoke the trust in a particular manner, he can revoke it only in that manner and the same principles are applicable to the modification of a trust as are applicable to its revocation. 3 Scott on Trusts, §§330.8, 331. Typical of the rule that a settlor cannot revoke or modify a trust deed by a provision in a will, under a reserved power such as exists in the testator's insurance trust agreement, are the following cases: *Shapley Trust*, 353 Pa. 499; *Kelley* v. *Snow*, 185 Mass. 288; *Brown* v. *Fidelity Trust Co.*, 126 Md. 175; *Chase Nat. Bank of City of New York* v. *Tomagno*, 14 N.Y.S. 2d 759.

In the last-cited case the decedent had executed an *inter vivos* deed of trust reserving the power to revoke or modify the deed by a written notice filed with the trustee and executed by the settlor. One of the questions presented to the court was whether the last will and testament of the decedent constituted a valid modification of the trust deed pursuant to that reserved power. On this point the court said at page 761: "The trust agreement was carefully drawn and it covered in considerable detail all of the contingencies which might arise. Had the settlor been desirous of retaining the right to exercise the reserved powers by her last will and testament, it would have been the natural and appropriate thing so to specify. This she failed to do and her intention is unmistakenly drawn from a consideration of the entire instrument."

It is a cardinal principle of law that any modification of an *inter vivos* deed of trust, by will or otherwise, must be in plain and unequivocal language. As previously stated, in the instant cause the only difference between the language of the later will, with reference to the payment of death taxes, and the language of the earlier will, executed on the same date as the insurance trust agreement, is the addition at the end of the clause in the later will of the phrase "by reason of the occasion of my death." Since

the taxes for which payment was provided under the terms of either will were due only upon the death of the testator, such phrase in our opinion did not refer to taxes under the insurance trust agreement, since the estate transferred thereunder was not then a part of the decedent's estate and did not pass under his will.

When the testator in the first clause of his later will referred to the expenses of administration of "my estate," including as such expenses any and all taxes "in the nature of estate, inheritance, legacy, transfer and succession taxes which shall be payable to the Government of the United States or to any State of the United States by reason of the occasion of my death," it seems more reasonable to conclude that he meant such taxes on the estate passing *under his will* rather than taxes on the insurance trust estate which did not pass under his will; and that such taxes were included in the gross taxable estate only for the purpose of determining, assessing and collecting the entire tax due.

We think that the testator's expression "my estate" in his later will has a very definite and explicit meaning. Such expression, it has been said, "has a fixed and limited meaning; it is positive, clear-cut and free from doubt. It conveys an inference of existing title or ownership in the maker of the phrase and leads to the single conclusion that he had in mind the payment only of such taxes which might be levied upon his testamentary gifts or devises." *Palmer* v. *Palmer*, 135 N.J. Eq. 516, 530.

Assuming that such change could be effected by decedent's will, if it had been the testator's intention to provide for the payment out of the testamentary estate of taxes upon property held under the insurance trust agreement and thereby to amend that agreement by altering an express provision thereof, it would have been simple to express that purpose in appropriate language. The law requires clarity in the statement of such a purpose. *Palmer* v. *Palmer, supra; In re Weiskotten's Estate*, 3 N.Y.S. 2d 810.

For example, in *Chase Nat. Bank of City of New York* v. *Tomagno, supra,* the court said at page 761: "A provision in a will that all taxes be paid out of the residuary or general estate applies only to property passing under the will *unless it specifically refers to other property,* and has no effect upon inter vivos dispositions, which for one reason or another are drawn into the gross estate for tax purposes." (italics ours)

The same principle was applied by this court in *Hooker* v. *Drayton,* 69 R. I. 290, where while no *inter vivos* deed was involved but where the exercise, by a decedent donee, of a power to appoint by will was in issue, the court at page 296 used the following language: "In the absence of a clearly expressed intent to the contrary in the decedent donee's will such tax is ultimately to be borne by the appointed property, and not by his residuary estate. Such a rule is more consistent with logic and the realities than is a rule which, in the absence of a testamentary expression to the contrary, would assume that the residuary estate of the donee was chargeable with such tax burden."

From a careful examination of the insurance trust agreement and the two wills of the testator, we are of the opinion that by the terms of the instant will he has not expressed an intention to thus burden his estate, and that such an intention does not clearly appear from the language thereof.

For the reasons stated and on the authority of the cases above cited, we are of the opinion that the testator did not intend that the trust estate passing under his will and now under consideration should pay that portion of the tax assessed by the federal government and allocable under the internal revenue code to the estate transferred under the insurance trust agreement. The total federal tax therefore may be apportioned between said trust estate of the testator which passed under his will and the estate which was transferred under the insurance trust agreement. We see no reason in the circumstances herein appearing why

the apportionment may not be made in the manner and in the proportions provided by said internal revenue code. We are of the further opinion that each of said estates should bear its proportionate part of any state taxes that may be legally assessed.

On November 9, 1949 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Greenough, Lyman & Cross, Ronald C. Green, Jr., R. Gordon Scott, Jr.,* for complainants.

*Edwards & Angell, William H. Edwards, Robert S. Davis,* for respondent Isabel Watson Taylor.

*Horace L. Weller,* guardian *ad litem* of minor respondents and of persons not in being or unascertainable.