EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and EDWARD L. RICHARDS, JR., Executors under the Last Will and Testament of Elizabeth M. Richards, deceased,

vs.

EDWARD L. RICHARDS, JR., et al.

EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor under the Last Will and Testament of Florence Mae Ely Beacom, deceased,

vs.

JAMES HOWARD NOBLE, et al.

*Orphans' Court, New Castle, May 5, 1950.*

HARRINGTON, Presiding Judge, sitting:

*Clement C. Wood,* for Equitable Trust Co. and Edward L. Richards, Jr., executors of the last will and testament of Elizabeth M. Richards, deceased.

*William H. Foulk,* for Rebecca F. McDonald and Phebe C. McDonald, equitable life beneficiaries of the residue of decedent's testamentary estate.

*Caleb S. Layton,* for Equitable Trust Co., trustee under the trust agreement executed by Elizabeth M. Richards on February 20, 1935.

*Henry M. Canby,* for Equitable Trust Co., trustee under the last will and testament of Elizabeth M. Richards, deceased.

*Albert J. Stiftel,* guardian *ad litem* for Jack Van Hart and T. George Van Hart, minors, interested under the will of Elizabeth M. Richards, deceased.

*William Poole,* and *Sanford D. Beecher,* of Duane, Morris & Hecksher, Philadelphia, Pa., for American Friends Service Committee, Inc., and Trustees of Philadelphia Yearly Meeting of Friends.

*Clarence A. Southerland,* filed a brief as *amicus curiae*

in the Richards case in support of the entry of an order pursuant to the prayers of the petitions.

*Caleb S. Layton,* for Equitable Trust Co., executor of the last will and testament of Florence Mae Ely Beacom, deceased, one of the petitioners.

*Henry M. Canby,* for Equitable Trust Co., trustee under the last will and testament of Florence Mae Ely Beacom, deceased.

*E. Ennalls Berl* and *James L. Latchum,* for Equitable Trust Co., trustee for William H. Beacom and others.

HARRINGTON, President Judge:

The question is whether the Delaware act, *Chapt.* 119, *Vol.* 46, *Laws of Del.*, providing for the equitable proration of federal estate taxes paid by executors applies to the estates of Elizabeth M. Richards, deceased, and Florence Mae Ely Beacom, deceased. Elizabeth M. Richards executed her last will and testament August 10, 1945, and a codicil thereto on May 7, 1946. She died July 19, 1946, and shortly thereafter her will and codicil were duly proved before the Register of Wills for New Castle County. Letters testamentary were granted to the petitioners, the executors named in the will, July 24, 1946.

Florence Mae Ely Beacom executed her will August 21, 1940, and died February 27, 1946. That instrument was subsequently duly proved before the Register of Wills for New Castle County, and on March 13, 1946, letters testamentary were granted to Equitable Trust Company, one of the executors named in the will. William H. Beacom, the other executor, renounced his right to act and failed to qualify.

Elizabeth M. Richards bequeathed specific legacies amounting to $13,861.50 to her sisters, Rebecca F. McDonald and Phebe C. McDonald. She devised and bequeathed the residue and remainder of her estate to Equitable Trust Company, in trust, to pay the net income to her said two sisters during their lives, and the life of the survivor. Upon the death of both, the trustee was directed to pay the fund, discharged of the trust to American Friends Service Committee, Inc., Philadelphia, Pennsylvania. Ultimate contingent rights in remainder in other trust funds were given to Trustees of Philadelphia Yearly Meeting of Friends, a corporation of the State of Pennsylvania, to be used for the benefit of George School in Bucks County, Pennsylvania, American Friends Service Committee, Inc., of Philadelphia, and The Friends Home, Kennett Square, Pennsylvania.

Florence May Ely Beacom devised and bequeathed the remainder of her estate to Equitable Trust Company, in trust, to pay the income therefrom to her husband, William H. Beacom, during his lifetime. There were various directions with respect to the disposition of both income and portions of the principal at his death, but The Home of The Merciful Rest Society, the Masonic Home of Delaware, Inc., and Minquadale Home were the ultimate contingent beneficiaries in remainder of portions of the fund.

The Internal Revenue Act imposes a tax upon the "net estate" of a person dying after its enactment, *Title 26 U.S.C.A. Chapt. 3*, §§ 810-812, which "shall be paid by the executor to the collector." 26 *U.S.C.A.* § 822(*b*), *supra.* It also provides:

"So far as practicable and unless otherwise directed by the will * * * the tax shall be paid out of the estate before its distribution." § 826(*b*).

If the tax is not paid, with certain exceptions which need not be considered, it remains a lien upon the decedent's "gross estate" for ten years. § 827(*a*), (*b*). Moreover,

under the provisions of *Section* 826(*b*) the Tax Commissioner is "not hampered by those equitable rules ordinarily inherent in imposing transferee liability and is not required to exhaust the assets of the estate before taking steps to collect a tax from a transferee of taxable property." *Equitable Trust Company, Trustee & Transferee v. Com'rs*, 13 *T.C.* 731. But if any of the tax is collected from persons having possession of a part of the decedent's gross estate, reimbursement from the executors can be compelled if there are assets. 26 *U.S.C.A.* § 826(*a*), *supra*.

Both Elizabeth M. Richards and Florence Mae Ely Beacom died possessed of considerable personal property which passed to their executors for distribution to legatees after the payment of debts and charges. It is conceded that other personal property which did not pass to their executors composed a part of their gross taxable estates under the Internal Revenue Act. On the death of Elizabeth M. Richards, her surviving sisters, Rebecca F. McDonald and Phebe C. McDonald became the owners and possessors of the following non-testamentary personal property:

| | |
|---|---|
| (1) U. S. Defense Bonds, Series E and G, jointly owned with the decedent, in the face amount of $4500 but having a value at her death of | $ 3,879.51 |
| (2) The balance in a joint bank account with the decedent amounting to | 9,713.41 |
| (3) U. S. Savings Bonds, Series E and G, in which they were designated as the payees on the death of the decedent, in the face amount of $6,000, but having a value at her death of | 6,824.82 |
| (4) The proceeds of insurance policies on the life of the decedent amounting to | 37,810.09 |
| (5) The remainder interest in a fund transferred by Elizabeth M. Richards during her lifetime to Equitable Trust Company, in trust, by deed dated February 20, 1935, on which she reserved the right to receive the income during her lifetime, amounting to | 22,188.64 |
| | $80,416.47 |

Rebecca F. McDonald and Phebe C. McDonald also

ultimately received the specific legacies under the will of Elizabeth M. Richards above referred to, amounting to $13,861.50. On October 16, 1947, the executors of Elizabeth M. Richards filed a federal estate tax return which included the testamentary property in their hands as well as the non-testamentary property composing a part of the decedent's taxable gross estate and showed a tax due the United States of $83,165.77. The tax was paid and deducted from the decedent's residuary estate and the payment appears in an account thereafter passed by the executors before the Register of Wills for New Castle County. The balance in hand, amounting to $226,018.58, was paid to Equitable Trust Company, Trustee, in accordance with the directions of the residuary clause of the will.

It appeared from an agreed statement of facts, signed by Clement C. Wood, Esquire, attorney for the executors of Elizabeth M. Richards, deceased, and William Poole, Esquire, attorney for the Trustees of Philadelphia Yearly Meeting of Friends and American Friends Service Committee, Inc.: (1) that the Delaware state inheritance taxes, in the amount of $10,708.45, on the estate of Elizabeth M. Richards, deceased, were paid by the executors from the residuary estate of the said deceased on September 23, 1947, and (2) that the amount of the Delaware state inheritance taxes allowed as a credit against the federal estate taxes on the estate of Elizabeth M. Richards, deceased, under the provisions of *Section 813 (b)* of the *United States Internal Revenue Act* was $6,296.19.

On the death of Florence Mae Ely Beacom, her husband, William H. Beacom, as the survivor, immediately became the sole owner and possessor of the jointly owned non-testamentary personal property composing a part of the decedent's taxable gross estate in the amount of $13,972.11. On May 26, 1947, her executor filed the federal estate tax return which included both testamentary and non-testamentary property and paid a tax of $34,862.86 to the col-

lector. On March 8, 1948, an additional sum of $63.68, with $2.97 interest, was demanded and paid. These payments appeared in an account subsequently passed before the Register of Wills for New Castle County and were deducted from the decedent's residuary testamentary property in the hands of her executor. The balance in hand was paid to Equitable Trust Company, Trustee under the residuary clause of the decedent's will, but the amount paid does not appear.

With some unimportant exceptions [see *Title* 26, *U.S.C.A. Chapt.* 3, § 826(*c*), (*d*)], the *Internal Revenue Act* does not provide for the equitable proration of federal estate taxes paid by an executor among the persons benefited at a decedent's death. The states, however, have that power in proper cases since such acts are not repugnant to the federal estate tax laws and do not violate either the supremacy or uniformity clause of the federal Constitution. *Art.* 1, § 8, cl. 1. *Riggs v. Del. Drago,* 317 *U.S.* 95, 63 *S. Ct.* 109, 87 *L. Ed.* 106, 142 *A.L.R.* 1131; *Merchants National Bank of Boston v. Merchants National Bank of Boston,* 318 *Mass.* 563, 62 *N.E.* 2d 831. The Legislature, therefore, enacted the proration act, *Chapt.* 119, *Vol.* 46, *Laws of Delaware,* which was approved by the Governor April 2, 1947. It provides:

"Whenever it appears upon any accounting, * * * that an executor, * * * has after the effective date of this Act paid an estate tax levied or assessed * * * under the provisions of any estate tax law of the United States heretofore, or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such proration shall be made by the Orphans' Court of the County in which any such accounting has been

made, or in which any such appropriate action or proceeding is pending. * * *"

This Act was enacted more than eight months after the death of Elizabeth M. Richards and more than thirteen months after the death of Florence Mae Ely Beacom, but the tax payments, which it is claimed should be prorated, were made after the Act took effect.

The petitions of the decedents' executors and the answers thereto raise two questions: (1) Was the Proration Act intended to apply to the estates of persons who had died before its enactment; and (2) if that was the intent, could the Legislature compel persons to contribute equitably to the federal estate taxes paid by the executors, because they had acquired taxable property at the death of the decedents but long before the enactment of the statute?

It is a settled rule of construction that a legislative act will not be applied retroactively unless such an intent clearly appears from the language used. *Keller v. Wilson & Co.,* 21 *Del. Ch.* 391, 190 *A.* 115; *Brown v. Pennsylvania Co. for Insurance on Lives and Granting Annuities,* 2 *W. W. Harr.* (32 *Del.,*) 525, 126 *A.* 715. But *Chapter* 119, *Volume* 46, *Laws of Delaware,* provides that if not otherwise directed by a decedent's will, there shall be an equitable proration of the federal estate taxes among the persons to whom any benefits accrued at the decedent's death when it appears "upon any accounting" that her executor has paid any such taxes "after the effective date" of the act. The broad and general language used seems to indicate that it was intended to apply to any federal estate taxes paid on unsettled estates after its enactment, though the decedents had died before. *Merchants National Bank of Boston v. Merchants Nat. Bank of Boston, supra; In re Jeffery's Estate,* 333 *Pa.* 15, 3 *A.* 2d 393; see also *In re Parker's Estate,* 348 *Pa.* 211; 34 *A.* 2d 514.

In the Massachusetts case, which involved a similar proration statute, the court held that it did not operate

retroactively because its application depended upon the payment of the federal estate tax after its effective date.

In the Pennsylvania case, the court said.

"We think the legislature intended that it (the Proration Act) should apply to existing proceedings * * *." [333 *Pa.* 15, 3 *A.* 2d, 393, 395.]

It also said:

"It is not important to consider whether it should be classified as retroactive or prospective; its terms show that it was clearly and manifestly intended to be applied to facts such as appear in the record."

The power to tax is an essential attribute of government, and in some cases retroactive tax legislation may be reasonable and valid, though it impairs vested rights. *Merchants Nat. Bank of Boston v. Merchants Nat. Bank of Boston, supra; Parlato v. McCarthy,* 136 *Conn.* 126, 69 *A.* 2d 648. But it is unnecessary to consider the scope of that rule. See *Nichols v. Coolidge,* 274 *U.S.* 531, 47 *S. Ct.* 710, 71 *L. Ed.* 1184, 52 *A.L.R.* 1081; *Coolidge v. Long,* 282 *U.S.* 582, 51 *S. Ct.* 306, 75 *L. Ed.* 562; *Welch v. Henry,* 305 *U.S.* 134, 59 *S. Ct.* 121, 83 *L. Ed.* 87, 118 *A.L.R.* 1142; 114 *A.L.R.* 518. The primary question is whether the proration act is a taxing statute. The estate taxes paid by the decedent's executors were not only imposed by the Internal Revenue Act, but their mode of collection, by lien or otherwise, was prescribed by it. Conceding that in most cases Congress has left it to the states to determine the way in which the ultimate burden of the tax may be apportioned among interested persons on the distribution of an estate, *Riggs v. Del Drago, supra; Merchants National Bank v. Merchants National Bank, supra,* such an act is not a taxing statute. *Parlato v. McCarthy, supra.*

In the latter case, the court said:

"Since the federal statute solely for federal purposes effectively imposed this tax upon the decedent's entire estate, the mere fact that Congress left it to applicable state law governing the devolution of property at death to determine its ultimate impact is insufficient to

constitute the proration statute a taxing statute. Not only is the tax imposed by the federal law but its imposition and methods of collection are fixed by that law. They determine the primary obligation and they create an incumbrance on the estate. Nothing the state can do will alter the nature of the obligations created by them, or change the nature of those of the persons bound to pay, or affect in any way the methods of enforcement. All the state can do is determine the way in which the burden so fixed shall ultimately be apportioned among the beneficiaries with such definition of the amounts payable as is incident thereto.

\* \* \* \* \* \*

"It was neither the purpose nor the effect of the proration statute to raise money for the federal government, and neither before nor after its enactment was the estate tax a tax upon beneficiaries under a will." [136 *Conn.* 126, 69 *A.* 2d 651.]

Furthermore, the proration act only applies after the executors have paid the federal estate tax.

The Connecticut court, *Parlato v. McCarthy, supra,* also said:

"The situation is in large measure analogous to one of contribution between defendants in a tort case; however the obligation to meet the sums due the plaintiff may ultimately be apportioned among them, his rights are in no way affected; he may use any or all; and contribution cannot help or hinder him in enforcing his rights."

When the constitutionality of a legislative act is attacked every reasonable inference is in favor of its validity. *Trader v. Jester,* 1 *Terry* (40 Del.) 66, 1 *A.* 2d 609.

But as the non-testamentary property, taxable as part of the gross estates of Elizabeth M. Richards and Florence Mae Ely Beacom, immediately passed on their respective deaths to Rebecca F. McDonald and Phebe C. McDonald and to William H. Beacom and was delivered to them, the provisions of the subsequent proration statute affect rights that had vested prior to its enactment and violate the *Fourteenth Amendment to the Constitution of the United States. Parlato v. McCarthy, supra.*

The property acquired was subject to a lien for the federal estate taxes which could have been asserted by the

collector in the first instance, but that did not prevent property rights from vesting at once. The same constitutional objection applies to the rights of legatees of testamentary personal property. When the decedents died, such property passed to their executors and was held by them in trust for the payment of debts and charges and for the distribution of the residue as directed by their wills. *In re Spicer's Estate,* (*Orp. Ct.*) 13 *Del. Ch.* 430, 120 *A.* 90; *Parlato v. McCarthy, supra;* 21 *Amer. Jur.,* 537, 539. The legacies given might be decreased, or even wiped out, by debts or other proper charges in the settlement of the estates, but it can hardly be said that the legatees did not acquire property rights on the death of the decedent, though the precise amount could not be determined until a later date. The possible burdens on both classes of property were increased by the subsequent provisions of the proration act. *Parlato v. McCarthy, supra.* As vested rights were affected there can be no equitable proration of the federal estate taxes paid on the estates of Elizabeth M. Richards and Florence Mae Ely Beacom. Id.

It is true that *Merchants National Bank of Boston v. Merchants National Bank of Boston, supra,* sustains the validity of a similar act though it was enacted after the decedent's death. See also *In re Jeffery's Estate, supra; Central Hanover Bank & Trust Co. v. Peabody,* 190 *Misc.* 66, 68 *N.Y.S. 2d* 256.

In the Massachusetts case the court said the

"* * * reasoning of our decisions, although dealing with the imposition of a tax and not with the closely connected question of the ultimate burden of a tax, tends to support the application of the apportionment statute * * *." [318 *Mass.* 563, 62 *N. E. 2d* 837.]

This language and other language used seem to justify the inference that the act was regarded as a taxing act though the court did not expressly say so. It did say, however, that the rights of the interested persons did not vest at the decedent's death. But as I have already indicated I am unable to answer the reasoning of the *Parlato* case.

This conclusion makes it unnecessary to consider the provisions of the will of Elizabeth M. Richards which were said to authorize the payment of the federal estate taxes from her residuary estate. But the prayers for general relief in both the petition of the executor of Florence Mae Ely Beacom and in the answer of the trustee, to which she bequeathed her residuary property, make it necessary to determine whether the directions of her will require the payment of a part of the federal estate taxes from other funds.

By Item II, paragraph 2, she bequeathed to her husband, William H. Beacom, all her

"* * * household furniture, personal effects and the residue of * * * (her) tangible personal property (exclusive of choses in action, stocks, bonds or other securities) together with * * * (her) interest in any jointly owned tangible personal property and together with all policies of insurance on said wholly owned or jointly owned tangible personal property * * *."

### By Item VIII the testatrix directed that

"* * * all estate, inheritance, transfer or succession taxes or death duties, State or Federal, upon any tangible personal property or any part thereof, or upon or by reason of the transfer of my tangible personal property or any part thereof, passing under my will * * * shall be paid out of the principal of my residuary estate and that no part thereof shall be charged against the legatees receiving such tangible personal property."

### She then directed that

"* * * all estate, inheritance, transfer or succession taxes or death duties, State or Federal, upon my estate or any part thereof, other than my tangible personal property disposed of in Item II hereof, or upon or by reason of the transfer of my estate, or any part thereof, other than my said tangible personal property, shall be charged proportionately, without interest, against the legacies provided for in Items III, IV, and V hereof, and in paragraph 3 of Item VI hereof, * * * at the time of payment of such legacies, and against the distributive shares of the residue of the trust estate (but not against the life interest therein) provided for in Item VI hereof, * * *."

It is said that under these provisions, the question to be determined is "whether the federal estate tax burden (1) is to be cast solely upon the residuary estate, or (2) is to be apportioned between her residuary trust and the legacies in Items III, IV, V and VI."

The first part of Item VIII directed the payment from the residuary estate of all the taxes enumerated, including the federal estate tax, upon the decedent's "tangible personal property * * * or upon or by reason of the transfer of my tangible personal property * * * passing under my will." This direction seems to include the payment of such taxes on her interest in "any jointly owned tangible personal property" which she had in terms bequeathed to her husband in Item II. Assuming that there was such property and that the words "jointly owned" were used in their technical sense, the decedent intended that interest to pass under her will clear of all estate and other taxes. That is the important factor in determining from what fund such taxes are to be paid. The whole of this direction is, therefore, consistent with the rule under the Internal Revenue Act, and the tax is payable from the decedent's residuary estate.

The second part of Item VIII related wholly to testamentary property other than the decedent's "tangible personal property disposed of in Item II," and so far as the rights of interested parties are concerned, changed the general rule with respect to the payment of federal estate taxes upon that part of the "estate." See *Palmer v. Palmer,* 135 *N.J. Eq.* 516, 39 *A.* 2d 438; *Union Trust Co. v. Watson,* (*R.I.*) 68 *A.* 2d 916. That direction requires such taxes to be "charged proportionately" against the legacies given by certain items of the will and the distributive shares under paragraph 3 of Item VI, the residuary clause. The equitable life interests given by that clause, including that of William H. Beacom, were however excused from the payment of any part of that tax. It also seems that the

legacy given by Item V of the will never took effect as William H. Beacom survived the testatrix.

The context shows that the limited meaning of the words "upon my estate or any part thereof" is not enlarged by the additional phrase "or upon or by reason of the transfer of my estate or any part thereof, other than my said tangible personal property." An estate tax arises at the death of the decedent and a transfer of the property occurs at that time. Furthermore, the testamentary direction included the payment of transfer and succession taxes as well as estate taxes, and the same language appeared in the first part of Item VIII.

My conclusion is that it does not clearly appear from the language used in the second part of that item that the testatrix intended to include in the apportionment provision the jointly owned non-testamentary property which the petition alleged amounted to $13,972.11. *Palmer v. Palmer, supra; Union Trust Co. v. Watson, supra.* The tax on that property, none of which appears to be tangible, is, therefore, payable from the residuary estate according to the federal rule.

Orders will be entered in accordance with this opinion.