OPINION OF THE COURT
Millard L. Midonick, S.
Prior to the entry of the decree construing the will in this proceeding for a determination as to the validity, construction and effect of testatrix’ will, a conference was held by the court on certain aspects of the opinion handed down which appeared in the New York Law Journal on September 14, 1978 (p 6, col 2) and which has been withdrawn and recalled.
The principal question presented by the executors for determination involves the source of payment of estate taxes with respect to both testamentary and nontestamentary assets. It appears that there may be conflicting provisions in this regard contained in the will and in an inter vivos trust created 10 years prior to the will.
The testatrix died June 27, 1977. Her will dated July 12, 1974 has been admitted to probate in this court. Article tenth of the will reads as follows: "tenth: I direct that all estate, inheritance, legacy, succession or other death taxes which may be assessed or imposed with respect to all or any part of my estate, wherever situated, whether or not passing under my Will, including the taxable value of all trust estates and of all transfers, powers, rights or interests includible in my estate for the purpose of such taxes, shall be paid out of my residuary estate as an expense of administration and without apportionment. ’ ’
The inter vivos trust was created on March 20, 1964. The decedent was the settlor, and the income beneficiary for her life, and the First National City Bank (now Citibank) the trustee. Paragraph ninth of the trust indenture dealing with estate taxes directs that a ratable share of such taxes shall be paid by the trustee as demanded by the legal representative of the estate of the settlor in a written instrument, and that the trustee shall be exonerated from making said payment without any duty of inquiry.
A reading of article eleventh of the trust indenture discloses that the settlor reserved the right to amend or revoke the trust at any time but only with a written consent of the trustee. The settlor bestowed absolute discretion upon the *1049 trustee either to give or withhold its consent to any proposed amendments or revocation, its decision in this regard being binding and conclusive upon any and all persons and not subject to review. Pursuant thereto the settlor modified said trust agreement by instrument executed on July 29, 1968. Beneficiaries were changed and the provisions of the original agreement reaffirmed. In that regard it is significant to know that in a prior will of the testatrix executed July 29, 1968, reference is made to the inter vivos trust in article ninth (b) as follows: "In making the foregoing bequest to Paula Epstein in trust I do so for reasons that she will readily understand and the foregoing bequest in trust is being made to her in lieu of the provisions made to her by the Trust Agreement bearing date March 20, 1964 in which First National City Bank of New York is the Trustee and I am the Settlor; which Agreement is about to be amended by me to remove Paula Epstein as a beneñciary. ” (Emphasis added.)
The tax clause of the 1968 will (art eleventh) is repeated verbatim in the 1974 will (art tenth) which has been probated.
Petitioner and the trustee suggest that the apparent conflict in the treatment of estate taxes may be resolved with a construction which will require the residuary estate to pay all estate taxes. It is argued that inconsistencies between inter vivos trust agreements and subsequent wills have been reconciled by ruling that the provision in the subsequent will supersedes that of the prior instrument. Here the later instrument is the will.
In Matter of Harbord (197 Misc 760, affd without opn 281 App Div 850, mot for lv to app den 305 NY 930), the will executed later than the trust, provided (p 761): " T direct my Executors to pay out of my residuary estate any and all inheritance, succession, estate, legacy or transfer taxes which may be levied or assessed in any jurisdiction against my estate, or the gifts, legacies, devises, bequests and trust herein-before set forth.’ ”
The court stated (pp 761-763):
"The court determines that the will contains a clear direction against apportionment extending to the estate tax imposed upon nontestamentary benefits, as well as to the tax imposed against property passing under the will. * * *
"It is therefore apparent that testator knew even before he executed his will that an estate tax might be imposed upon *1050 nontestamentary as well as testamentary benefits. It may be inferred, therefore, that in drafting his will the testator at least contemplated the possibility that a tax might be imposed against one or more nontestamentary benefits. * * * The court determines that the provisions of the will supersede the provisions of the trust indenture of 1939, with respect to any taxes imposed by reason of the establishment of such trust as well as to those taxes imposed by reason of any other nontestamentary disposition. In Matter of Weiskotten (167 Misc. 67) it was held that the conflicting provisions of the will and of a trust indenture were controlled by the instrument later executed.” (Emphasis added.)
The provision in the will at bar was executed 10 years after the trust agreement, and expressly refers to "all trust estates” and to transfers and interests includible in the estate for the purpose of estate taxes.
It has been said that in the construction of a will the court should so far as possible place itself in testatrix’ position when her will was made. Accordingly, in a proper case prior wills may be considered on questions of construction. (Dwight v Fancher, 217 App Div 377, affd 245 NY 71, mot for rearg den 245 NY 265.) Here the direction against apportionment expresses a testamentary scheme consistent with her prior will of 1968. It is a fundamental principle of construction that the intention of the testator is to be sought in the light of the circumstances, the testamentary scheme disclosed, and the intention of the testator as gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety. (Collister v Fassitt, 163 NY 281; Matter of Fabbri, 2 NY2d 236; Matter of Thall, 18 NY2d 186.) In the light of the foregoing the court determines that the testatrix intended her residuary estate to pay all estate taxes attributable to the testamentary and also to the nontestamentary assets.
Despite such intent expressed in the later will, the issue remains whether testatrix had the power to amend the trust indenture by her will. In that regard the trustee urges that article tenth of the will does not constitute an amendment to the trust. A provision such as that contained in article eleventh of the trust requiring a trustee to consent to any amendment or revocation of the trust is generally included for either or both of two reasons: first, to help protect the settlor and the beneficiaries of the trust from the claims of creditors, including expropriation by foreign governments; and second, *1051 to protect the trustee from having imposed on it responsibilities substantially in excess of those for which it had originally contracted. The trustee correctly points out that the trust assets are not being diminished by creditors or otherwise, but rather are being enhanced by paying estate taxes from sources outside the trust assets, and the fiduciary responsibilities of the trustee are not being increased. Under the terms of article eleventh of the trust the trustee is required to consent in writing to any amendment of the trust. The effect of the tax clause of the will is to increase the share of the trust assets to be received by the beneficiaries of the trust by releasing the trust from any obligation to pay estate taxes, even though the trust terms provide for such payment. Perhaps such payment would still have been appropriate if the estate were insolvent, and for this eventuality the two provisions, each indicating payment of estate taxes from different assets, are reconcilable, that is to say, if the estate residue were insufficient, the trust assets would be used to pay its share of the estate taxes. The trustee takes the further position that if article tenth of the will is deemed an amendment to the trust requiring the consent of the trustee, that such consent is formally submitted at this time. Since the powers reserved to the settlor in the instant case may only be exercised by the settlor with the written consent of the trustee, it follows that such action had to be commenced during her lifetime. (Cf. Chase Nat. Bank of City ofN. Y. v Tomagno, 172 Misc 63, where it was found that the settlor intended only lifetime amendment, and also that her will did not refer to trusts and that she did not intend to modify the trust.) The testator in that regard opened the door during her lifetime which was closed by the trustee’s formal consent now. Obviously such consent to a will provision could only have been obtained after her death. In such circumstances the court may direct or permit the trustee to deviate from a term of the trust though not expressly authorized or forbidden by the terms of the trust, where it is clear that such deviation was not anticipated by the testatrix and where compliance with the literal terms of the trust could defeat or substantially impair the accomplishment or the purpose of the trust. (Restatement, Trusts 2d, § 167, subd [1].)
In view of these considerations, the court holds that the direction against apportionment in decedent’s will is controlling, it being later in time than the trust direction and having the effect of enhancing rather than diminishing the trust.
*1052 During the course of a conference after the September 14, 1978 opinion, a further issue was raised by the Attorney-General, a party to this proceeding, in respect of a bequest to the attorney draftsman. At the conclusion of the conference the parties were granted leave to file additional memoranda pertaining to the issues in the construction and the gift to the draftsman. In connection with the collateral issue involving the bequest to the attorney draftsman, supporting affidavits having been submitted in lieu of testimony by the attorney draftsman. They disclose that Abraham Kleinberg is a nephew of the decedent, that for approximately 35 years before her death he maintained a close social relationship with his aunt, having dinner at least twice a week with her and at least one Sunday a month; that he spent a great deal of time in chauffering her, that he was her advisor in legal and financial matters and was the draftsman of at least six prior wills, five of which contained bequests similar to the one in the will admitted to probate, which bequests constitute a small fraction of the estate. It further appears from the affidavits that his relationship with his aunt was more akin to that of a mother and son and that it continued to the time of her death. The facts and circumstances disclosed in the supporting affidavits are not in dispute by any party to the proceeding and opposing affidavits have not been filed. The record as thus constituted satisfies the court that there is no showing of undue influence or other improper conduct in this estate (cf. SCPA 1408; Matter of Putnam, 257 NY 140).
Compensation to the attorneys representing each of the parties appearing to be fixed on submission of decree.
Submit decree construing the will in accordance with the above.